## Coomer v. Commonwealth.

Dec. 9, 1941.

B. J. Bethurum and J. S. Cooper for appellant.

Hubert Meredith, Attorney General, and Guy H. Herdman, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing.

Willie Coomer was convicted of willfully and maliciously cutting Elmer Wilson on the primary election day of this year. His punishment was fixed at nine years in the penitentiary. He is appealing upon the ground that the trial court admitted incompetent evidence which was highly prejudicial.

Coomer's father was a candidate for re-election as magistrate, and Wilson, a half-brother of Coomer's mother, was also a candidate for that office. While working at the polls Coomer was informed that Wilson was circulating objectionable literature concerning his father. During the forenoon he approached Wilson and they started toward a store where some of the litera-

ture had been left. The Commonwealth's version of the cutting is that, while the parties were walking toward the store, Coomer began to stab Wilson in the back; that Wilson was shoved to the ground; and that Coomer stabbed him several times while he was down. Coomer's version is that, as he and Wilson were walking toward the store, Wilson hit him in the chest with his fist, causing him to stagger backward; that thereupon he pulled his knife and cut Wilson as he was approaching him in a threatening manner; and that he inflicted two or three slight wounds on Wilson. According to Coomer, the fight stopped when Sherman Wallace approached the parties with a pistol in his hand. The appellant was taken away from the scene by his father.

The ground urged for reversal can best be understood by quoting the evidence to which objection is raised. Coomer's father testified that he was a candidate for re-election as magistrate; that he was present at the voting place near which the cutting took place; that he did not see the trouble between his son and Wilson; that he went there in a car and got his son and took him away to keep trouble down; and that he had seen his son earlier and that he was not drinking. On cross examination he testified as follows:

"Q 1. Do you know Joe Halcomb? A. Yes, I know Joe Halcomb.

Q 2. A short time before this trouble occurred, I'll ask you if you had a conversation with Joe Halcomb in which Joe Halcomb told you not to go down there drunk and get into trouble, and in which you then said back to him that you were not able to fight, but that you had a boy down there to do your fighting?

A. No, the only time I saw Joe Halcomb, he was down there about half drunk—

Q 3. I just asked you if you made that statement, and you said no, you did not?

A. No, I didn't."

After the completion of the appellant's evidence Halcomb was called by the Commonwealth and the part of his testimony to which objection is raised is as follows:

"Q 2. Do you know Squire Coomer? A. Yes, sir.

Q 3. A short time before this trouble occurred in which Elmer Wilson was cut, I'll ask you if you said to Squire Coomer for him not to go down there drunk and get in trouble and if he then said to you, 'I am not able to fight, but I've got a boy down there to do my fighting.' (Judge Bethurum: We object to that. The Court: Overruled. Judge Bethurum: Save an Exception.) A. Yes, sir.''

He also testified:

"Q 7. You got mad at Squire Coomer over grading a road, didn't you?

A. No, sir. I told him he'd been 'two-faced,' and I told him Elmer had him beat the best he could do, and I told him not to go down there drunk and get in trouble, and he told me he wasn't able to fight, but he had some boys down there to do his fighting for him.''

It can be seen that the question put to Coomer's father upon cross examination as to his conversation with Halcomb in no way contradicted his testimony on direct examination. The point is made for the Commonwealth that this question was asked with the view of laying the ground for contradiction relative to the alleged conversation with Halcomb and that no objection was made to the question. Apparently, counsel for Coomer knew that his father was going to say that he made no such statement to Halcomb, and therefore saw no reason for objecting at that time. When the question was asked Halcomb for the purpose of contradicting Coomer's father, proper objection was made and an exception saved. Halcomb's feeling toward the Coomers is indicated by his answer to Question 7 heretofore quoted when, for no apparent reason, he again referred to the alleged conversation with Coomer's father when he was asked if he did not get mad at the squire over the grading of a road. We think the evidence to which complaint is directed refers to an irrelevant and collateral matter. The alleged conversation did not take place in the presence of the appellant, and it not only relates to what his father was supposed to have said to Halcomb, but also what Halcomb said to the father. This we think was highly prejudicial to the appellant's substantial rights. As said in the case of Marcum v. Commonwealth, 282 Ky. 799, 140 S. W. (2d) 387, and

cases cited therein, the general rule is that the inquiry should relate to a fact that is otherwise relevant and competent and not collateral. The Commonwealth makes the point that, while the evidence in the cases cited was incompetent, it was not so prejudicial as to authorize a reversal in those cases; but the situation is different here, as we have indicated. The inquiry should have related to matters connected with the affray between Coomer and Wilson. That Halcomb was a biased witness is beyond question. His testimony as to the alleged conversation he had with Coomer's father might well have created the impression in the minds of the members of the jury that there was a premeditated plan between the squire and his son to stir up a difficulty with Wilson.

We think, for the reasons given, that the judgment should be and it is reversed, with directions that it be set aside and for proceedings consistent with this opinion.